BEYRER v. THE MULE

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:BEYRER v. THE MULE

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

BEYRER v. THE MULE2021 OK 45Case Number: 118075Decided: 09/28/2021THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 45, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

OMEGA BEYRER, Personal Representative of the ESTATE OF FRANCIS CHARLENE JOHNSON, Plaintiff/Appellant,
v.
THE MULE, LLC, Defendant/Appellee.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. I

¶0 Plaintiff filed an action based upon premises liability, and a jury verdict for defendant was followed by an order granting costs. Plaintiff filed a motion for new trial alleging juror misconduct during voir dire. The motion for new trial was denied by the Honorable Aletia Haynes Timmons, District Judge, District Court for Oklahoma County. Plaintiff appealed the order denying the motion for new trial and the order granting costs. The Court of Civil Appeals, Division I, reversed the order denying a new trial, and reversed the order granting costs. The Oklahoma Supreme Court previously granted the defendant's petition for certiorari seeking review of the Court of Civil Appeals' opinion on the issue of juror misconduct and plaintiff's motion for new trial. We hold: When a trial court adjudicates a motion for new trial based upon a juror's silence during voir dire concerning the juror's litigation history, the trial court may examine the nature of the juror's prior litigation to determine if it is material to the action then before the trial court. We also hold a juror's conduct did not rise to conduct affecting materially the substantial rights of the party when the juror failed to state on voir dire in a premises liability controversy his status as a named defendant in a motor vehicle case fourteen years earlier when (1) he was a minor, (2) he did not talk to a lawyer or participate in the prior action in any manner, and (3) the record shows both the prior action was settled shortly after filing and no economic detriment suffered by the juror/defendant as a result of the litigation. We further hold: The portion of the opinion by the Court of Civil Appeals which reversed the District Court's order adjudicating costs is not disturbed on certiorari review, and this reversal of costs is incorporated into the appellate mandate.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL
APPEALS VACATED IN PART; OPINION OF THE COURT OF CIVIL APPEALS
WITHDRAWN FROM PUBLICATION; ORDER OF THE DISTRICT COURT
DENYING MOTION FOR NEW TRIAL AFFIRMED;
ORDER OF DISTRICT COURT GRANTING COSTS REVERSED;
CAUSE REMANDED FOR FURTHER PROCEEDINGS

David Bernstein, Bernstein Law Firm, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Brad Miller, Weston H. White, Jami Rhoades Antonisse, Miller & Johnson, PLLC, Oklahoma City, Oklahoma, for Defendant/Appellee.

EDMONDSON, J.

¶1 The question presented is whether a District Court may examine the circumstances of a juror's prior litigation history for the purpose of determining whether the juror's failure to disclose this history during voir dire did not affect materially the substantial rights of a party. We answer in the affirmative. Plaintiff filed a motion for new trial based upon a juror's silence to two questions relating to prior litigation history which the voir dire panel was asked by defendant. Plaintiff argues the juror's silence denied her an opportunity to make an informed challenge to the juror and that she is entitled to a new trial. We conclude a trial court's adjudication of a motion for new trial may include an examination of the circumstances of the juror's litigation history when the motion is based upon a prospective juror's failure to disclose litigation history during voir dire. We affirm the District Court's denial of plaintiff's motion for new trial.

¶2 Francis Johnson and her sister, Omega Beyrer, visited a restaurant where Johnson fell and suffered a fractured hip. Johnson brought an action based upon premises liability against The Mule LLC (Restaurant) in the District Court of Oklahoma County and a jury trial was held in February 2019. The jury returned a verdict determining Johnson was 74% negligent and Restaurant 24% negligent, and awarded no damages to Johnson. Johnson filed a motion for new trial.

¶3 Johnson's motion for new trial asserted the jury foreman, D. K., had failed during voir dire to disclose his prior involvement as a defendant in an Oklahoma County tort action in 2005. D. K. was named with his father as defendants in a 2005 action which alleged D. K. used his father's automobile which resulted in an automobile collision. The collision and 2005 action occurred when D. K. was a minor. In 2019 at the time of Johnson's trial, D. K. was married, he had two minor children, and he was employed as the human resource director for a school.

¶4 The trial court denied plaintiff's motion for new trial. Restaurant also sought costs from plaintiff. Dr. S. was Johnson's expert witness for the trial. Restaurant paid a $3,000.00 fee for Dr. S. to appear and testify at trial instead of Johnson's lawyer reading Dr. S.'s deposition to the jury at the trial. After the verdict, Restaurant sought an award for the fee it paid to Dr. S. for the trial appearance. The trial court granted Restaurant's motion for costs which included an amount of $1,500.00 for one-half of Dr. S.'s fee.

¶5 Johnson died and Beyrer was substituted as the plaintiff. Beyrer appealed the trial court's denial of the motion for a new trial and the trial court's award of $1,500.00 for one-half of Dr. S.'s fee. The Court of Civil Appeals stated the trial court's denial of the motion for new trial was an abuse of judicial discretion due to the jury foreman's failure to disclose his prior involvement as a defendant in a tort action. The appellate court also determined no Oklahoma statute authorized the $1,500.00 award to Restaurant.

¶6 The appellate court's opinion reversed the trial court with a remand for a new trial. The three-judge panel had a split vote with one judge concurring, one judge concurring specially, and one judge dissenting. The Court of Civil Appeals released the three writings for publication.

¶7 Restaurant filed a petition for certiorari in this Court, and certiorari was previously granted. The petition for certiorari raised the issue of a juror's failure to disclose information during voir dire. Restaurant's reply on certiorari stated it sought certiorari for two reasons, and both involve a juror disclosing information during voir dire.

I. Certiorari Issues, COCA Opinion Vacated in Part and Withdrawn From Publication

¶8 The issue of costs was adjudicated by the Court of Civil Appeals and no party has sought certiorari to review that issue. We conclude the opinion of the Court of Civil Appeals should not be vacated as to the portion of the appellate opinion adjudicating costs.

¶9 Generally, our review of an issue on certiorari to the Court of Civil Appeals is based upon a party (1) preserving the error in the trial court with a proper trial record,1 (2) seeking appellate review of the issue in the context of an appealable order2 with a supporting appellate record,3 (3) assigning the preserved error on appeal by a petition in error,4 and (4) raising the assigned error in an appellate brief with supporting authority,5 and (5) raising the issue in a petition for certiorari with authority and argument.6 Preserved issues decided by the appellate court and which are later omitted from the petition for certiorari will usually not be considered by this Court during certiorari review.7 There are exceptions to some of these general principles such as when this Court adjudicates (1) briefed issues not previously addressed by the Court of Civil Appeals,8 (2) appellate jurisdictional issues,9 (3) public policy issues,10 and (4) issues outside of the appellate record and briefs but properly before the Court by a different method such as a supervisory writ proceeding consolidated into a single appellate mandate,11 instead of a consolidation for the purpose of one opinion addressing different controversies with their separate trial and appellate records.12 When a party prevails on an issue before the Court of Civil Appeals, then the party may advance arguments on certiorari which support the analysis by the Court of Civil Appeals without filing a petition for certiorari,13 and this is merely application during certiorari review of a well-known appellate procedure.14

¶10 If an assigned error is adjudicated by the Court of Civil Appeals and the adjudicated error is not challenged on certiorari, then the portion of the opinion by the Court of Civil Appeals adjudicating that issue will usually become a part of the law of the case combined with the adjudication on certiorari.15 In certain circumstances our certiorari review may result in this Court vacating the entire opinion of the Court of Civil Appeals although an appellant failed to raise an issue on certiorari.16 Other types of relief may be appropriate during certiorari review, such as a Hough v. Leonard remand to the Court of Civil Appeals when an issue was not addressed by that court.17

¶11 The scope of certiorari in the present controversy is similar to our 1995 opinion in Jackson v. Jones.18 In Jackson we stated a portion of the Court of Civil Appeals' opinion adjudicating the issue of trial court costs would stand undisturbed as settled law of the case when no party made a timely certiorari challenge to the appellate adjudication of the costs.19 Our case today also involves an adjudication by the Court of Civil Appeals on the issue of costs awarded by the trial court. The adjudication was not challenged by a petition for certiorari, and we leave undisturbed the portion of the opinion on the issue of costs.

¶12 An opinion of the Court of Civil Appeals released for publication may be withdrawn from publication by the Supreme Court.20 During certiorari review we have withdrawn an opinion by the Court of Civil Appeal from publication and simultaneously vacated a part of the appellate opinion.21 An opinion of the Court of Civil Appeals may be cited "to support a claim of res judicata, collateral estoppel, or law of the case" although the opinion was not released for publication or was withdrawn from publication.22 Our withdrawal of the appellate opinion from publication has no effect on the appellate disposition of costs adjudicated by the Court of Civil Appeals, which is left undisturbed by our certiorari review.

¶13 We vacate that portion of the opinion by the Court of Civil Appeals which adjudicated the issue relating to the motion for new trial. We leave intact that portion of the appellate opinion adjudicating the issue of costs. We withdraw from publication the entire opinion by the Court of Civil Appeals.

II. Appellate Standard of Review Summary

¶14 Beyrer and Restaurant have different views on the legal standard a trial court should use on a motion for new trial when adjudicating alleged juror misconduct during voir dire. Beyrer argues the trial court must determine whether a juror's conduct denied her an opportunity to obtain complete and accurate knowledge necessary for an informed challenge to a juror she finds objectionable. Restaurant argues the juror's conduct must be examined in relation to the controversy to determine the conduct's materiality to the concept of a fair trial. As explained herein, a 12 O.S. § 651(2) motion for new trial is based upon a juror's conduct "affecting materially the substantial rights of the party." In summary, Beyrer's argument focuses on her lack of opportunity to obtain information as legal error affecting materially a substantial right, and Restaurant states the juror's conduct did not deny Beyrer a fair trial or affect materially her substantial rights.

¶15 Beyrer's assigned error is that an incorrect application of law occurred on adjudication of her motion for new trial. An order adjudicating a motion for new trial receives an appellate review using the abuse of discretion standard,23 and with a slightly different analysis based upon whether the motion was denied or granted.24 An abuse of discretion occurs when the trial court bases its decision on an erroneous conclusion of law or when there is no rational basis in evidence for the ruling.25 An alleged error of law or conclusion of law by a trial court adjudicating a motion for new trial is reviewed on appeal using de novo review,26 which examines the legal issue anew or a second time with a non-deferential review.27 Whether a trial court applied the correct standard of law to issues of fact and law is reviewed using a de novo standard by an appellate court.28 Additionally, an error of law is insufficient, by itself, to set aside a jury verdict by a motion for new trial. We have explained: "If we find error in the trial court's rulings on a question of law, we must then determine that the legal error has resulted in a miscarriage of justice or a substantial violation of a statutory right before we may set aside the jury verdict and grant a new trial."29

¶16 Beyrer invokes various constitutional provisions in appellate briefs, the Seventh Amendment to the U.S. Constitution and Article 2, §§ 6, 7, and 19 of the Oklahoma Constitution. An assignment of error raising a constitutional issue usually raises a question of law and receives de novo appellate review;30 and while a constitutional issue of law may involve application and review of a constitutional fact,31 appellate review of a finding of fact is usually dependent upon the trial court procedure used for the adjudication and the nature of the controversy,32 the nature of the finding as well as its relation to other findings,33 the particular trial tribunal from which the appeal has been taken,34 and other factors we similarly need not review and apply herein. We need not address the merits of Beyrer's reliance on constitutional authority or application of facts related to such reliance. No constitutional claims were asserted and briefed by Beyrer's motion for new trial in the trial court, an appellant's assignments of error may not be expanded beyond those raised in appellant's motion for new trial, and Beyrer does not raise any exceptions to this principle.35

¶17 Generally, a District Court's general judgment is presumed to include a finding of every material fact necessary to support the judgment when specific findings are neither required by law nor expressly stated by the trial court.36 We recently explained this principle includes appellate review of a summary judgment and applied it in the context of a trial court's denial of a motion for new trial.37 The trial court's order adjudicating the motion for new trial does not have findings of fact and conclusions of law. The order simply states: "Plaintiff's motion for new trial is denied, as alleged juror misconduct is insufficient to warrant a new trial."38

¶18 Restaurant submitted an affidavit as an exhibit to its response on Beyrer's motion. The affidavit explained the juror's understanding and interpretation of certain questions during voir dire as well as facts relating to the juror's legal history. No objection to the affidavit, or its statements therein, or additional evidentiary record on this issue, is before us as part of the appellate record. We also note (1) Beyrer makes no argument that she challenged a finding of a fact in the trial court or preserved such for appeal,39 and (2) in the absence of a party's challenge to a trial court's finding, the right to question a finding is usually waived.40 Any finding of fact necessary to the trial court's adjudication that the juror's conduct did not affect materially substantial rights of Beyrer is presumed as part of our review when the appellate record supports the finding.

¶19 In summary, an appellate determination of the proper trial court standard for adjudicating juror misconduct on a motion for new trial presents an issue of law reviewed de novo on appeal, and any finding of fact necessary for adjudicating Beyrer's motion for new trial is presumed when the fact was before the trial court when it decided the motion.

III. Voir Dire and Juror's Affidavit

¶ 20 The trial judge made some introductory comments to the prospective jurors, the oath was administered, and the trial judge asked the panel several questions. The trial judge's questions did not include prior litigation history. Counsel for plaintiff then asked many questions of the panel and individual prospective jurors. The sixty transcript pages of questions do not include any questions from plaintiff concerning prior litigation history of the prospective jurors.

¶21 Counsel for the defendant was next to ask voir dire questions. A member of the venire panel explained her father was a retired lawyer in Texas, and then counsel asked: "Does anybody else have any connection with the law or lawyers or a lawsuit even, that we haven't talked about already? Anyone been in a lawsuit, car wreck, anything like that?" Tr. at 106. No response was made by a prospective juror.

¶22 After questions concerning prior jury service of the prospective jurors, counsel for defendant stated: "Does that remind anyone else of anything they've ever done with the system, our justice system? Whether criminal or civil, that we have not or you have not already mentioned?" Tr. at 116. No response was made by a prospective juror. Counsel for defendant asked: "Anyone been a defendant in a case? By defendant I mean someone who's been sued, let's say. No?" Id. Then one prospective juror stated he had observed more than one murder trial involving his family, another had appeared as a witness in a lawsuit, and another "had a small claims case that was dismissed." Tr. 116-20. Prospective juror D. K. did not respond to these questions. These questions by counsel for Restaurant were used to support Beyrer's argument for a new trial.

¶23 Restaurant filed a response to Breyrer's motion for new trial, and attached an affidavit from juror D. K. stating his understanding of questions from counsel during voir dire. He stated he understood the questions as including only those jurors who had participated in courtroom proceedings. He stated that after his automobile collision while driving his father's car as a minor, he did not talk to a lawyer or participate in a courtroom proceeding. His father shielded him from the lawsuit, and it was settled a few months after it was filed. He stated the 2005 car collision and lawsuit naming him as a defendant when he was a minor did not affect his ability to serve as an impartial juror or foreman in the 2019 trial. He stated he did not intentionally withhold information during the voir dire proceedings.

IV. Summary of Parties' Claims

¶24 Beyrer states, if a juror gave a false or deceptive answer pertaining to the juror's qualifications, then the deceived party is entitled as a matter of law to a new trial even if the juror's possible prejudice is not shown to have caused an unjust verdict. Beyrer argues the trial court should not determine whether the juror's answer could have been an innocent misunderstanding of counsel's questions on voir dire. In summary, Beyrer's argument is that any incorrect information concerning a prospective juror's litigation history provided by a juror's silence or statement during voir dire is sufficient to show juror misconduct affecting materially the substantial rights of a party for the purpose of a motion for new trial. Beyrer states juror D. K. gave two or three incorrect answers on voir dire by remaining silent in response to questions from Restaurant, and she is entitled to a new trial.41

¶25 Restaurant argues that if a juror gave an inaccurate, false, or deceptive answer pertaining to the juror's qualifications, then the trial court must next determine whether the answer caused an unjust verdict. In summary, Restaurant argues the trial court's role adjudicating a motion for new trial is to determine first whether a deceptive answer was made, and then next to determine the effect of the juror's deceptive answer on the verdict, result, or outcome of the trial. Restaurant argues the trial court correctly determined the juror's silence to defendant's voir dire questions did not create an unjust verdict or a result, and plaintiff was not prejudiced by the juror's conduct.

¶26 Plaintiff argues that had she known a prospective juror had been a defendant in a prior case then she would have never kept the person as a juror. She states she would have asked the trial court to remove the juror for cause, and if unsuccessful she would have removed the person from the jury by using a peremptory challenge. She argues persons who were defendants in prior cases "are not good jurors for plaintiffs bringing personal injury actions." She argues a litigation history of a proposed juror as a named defendant is always material, as a matter of law, on the issue of a proposed juror's qualifications. She also argues that if a prior history as a named defendant is not material as a matter of law, it is material to her and she was denied this information for the purpose of making her challenge to the juror.

V. Analysis

¶27 Johnson filed a motion for new trial pursuant to 12 O.S.2011, § 651(2). This statute includes the following.

A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party: . . . 2. Misconduct of the jury or a prevailing party;

12 O.S.2011, § 651. A motion for a new trial may be based upon misconduct of the jury "affecting materially the substantial rights of a party." The parties agree the juror did not disclose certain information during voir dire.42 They disagree on what constitutes "misconduct of the jury" for the purpose of "affecting materially the substantial rights of the party" for 12 O.S. § 651 when a juror fails to disclose information on voir dire.

¶28 Historically, when a post-trial challenge to a juror's qualification did not per se constitute grounds for a new trial, "only the discretion of the court can be appealed to, which will consider the nature of the objection to the juror, what diligence the party exercised to ascertain the fact in due time, and the other circumstances of the case."43 Diligence in correcting alleged trial error by the party aggrieved appears in our motion for new trial statute, 12 O.S. § 651, for certain claims used to obtain a new trial.44 Although "misconduct of the jury" in § 651(2) is not expressly tied by its language to a party's diligence in correcting error, in recent times courts have revisited the concept of a party's diligence in discovering facts during voir dire and timely objecting to a juror's participation. For example, in 1984 the U.S. Supreme Court made the following observation.

To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination.

McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 555, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). The High Court opined that a juror's honest and mistaken response to a question on voir dire should not be used to negate a trial when counsel failed to pursue an item of information on voir dire examination. Language similar to McDonough Power was recently expressed by the Supreme Court of Missouri when it explained that in future cases a party must promptly bring to the trial court's attention information about jurors' prior litigation history, and a party must use reasonable efforts to examine the litigation history of jurors on a publicly available computer-accessible database.45

¶29 Of course, Beyrer argues she had no opportunity to pursue critical information because of the juror's silence, and presumably any positive response from the juror on the issue of litigation history would have elicited additional inquiry from Beyrer during voir dire. On the other hand, Beyrer's concern for a juror's litigation history as a critical component for her obtaining a fair trial based upon jurors with her approval is not immediately apparent from her own silence on the issue when she asked no questions on litigation history during her voir dire of the prospective jurors.

¶30 Beyrer quotes Stillwell v. Johnson, 1954 OK 189, 272 P.2d 365, and states: "The juror could have been prejudiced against one who instigates such an action." Id. 272 P.2d at 368. She argues a new trial is contingent merely upon whether a juror was deceptive or inaccurate during voir dire, and prejudice to a party, fairness of the verdict, and the intent of the juror when making an inaccurate statement are simply not considered for an adjudication of juror misconduct and a motion for new trial. She further invokes two concepts from Stillwell, one which has not been applied in the manner advocated by Beyrer, and the other has been repudiated by courts in the jurisdiction from which it was adopted by this Court.

¶31 In Stillwell we adopted one line of reasoning from the Supreme Court of Kansas in Kerby v. Hiesterman, 162 Kan. 490, 178 P.2d 194, and another line of reasoning from the Supreme Court of Kentucky in Drury v. Franke, 247 Ky. 758, 57 S.W.2d 969, 88 A.L.R. 917 (1933). We quoted the Kansas court with approval and stated the following.

When a prospective juror, on voir dire examination, gives a false or deceptive answer to a question pertaining to his qualifications with the result that counsel is deprived of further opportunity to determine whether the juror is impartial, and the juror is accepted, a party deceived thereby is entitled to a new trial even if the juror's possible prejudice is not shown to have caused an unjust verdict.

Stillwell, 272 P.2d at 368 (quoting Kerby, 178 P.2d at 195). Our plaintiff, Beyrer, focuses on whether a juror's statement was inaccurate, false, or deceptive.

¶32 Kansas courts construing Kerby have explained its application is not based upon a mere inaccurate, false, or deceptive answer by a juror in all circumstances. For example, the inaccurate or deceptive answer must pertain to the juror's qualifications, and a prior litigation history of a juror does not, by itself, pertain to a juror's qualifications in a particular case. Kerby required the juror's false answer on voir dire to be concerning the juror's qualifications to serve as a juror, with the result that the false answer deprived counsel of any further opportunity to determine whether the juror was fair and impartial.46 One court explained a juror's non-disclosed prior litigation must be examined for similarity with the cause of action before the court.47

¶33 When applying this principle in a Kansas court the element of prejudice is introduced into the new trial calculation because courts "consistently adhere to the rule in both civil and criminal cases that juror misconduct is not a ground for a reversal, a new trial, or a mistrial unless it is shown to have substantially prejudiced a party's rights."48 The juror's undisclosed participation as a debtor in several previous debt collection cases did not, by itself, establish any bias against a party in an action for wrongful termination from employment, and the juror's failure to disclose the litigation history did not show juror misconduct.49

¶34 A presumed prejudice could be a part of the new trial adjudication when the voir dire question and correct answer on the issue of litigation history were material to the controversy pending before the court. A different Kansas court agreed that juror misconduct warranting a new trial must have "substantially prejudiced a party's rights," and a juror's false or deceptive answer during voir dire depriving a party of the opportunity to question the juror further on that point would create a presumption of prejudice if the question was material.50 The court also explained, "Kansas appellate courts have reversed the denial of a new trial when the facts demonstrate a juror intentionally gave false answers to material questions during voir dire."51 In summary, prejudice to a party would be presumed from a deceptive answer if the actual prior litigation history was material to the controversy requiring the juror's participation. Further, Kansas courts would examine if the juror's answer on voir dire was an intentional deception by the juror.

¶35 We relied on the Kentucky Supreme Court in Drury v. Franke, supra, and stated we need not examine whether a deceptive juror had a purpose or intent to mislead the court.52 A more recent opinion from a Kentucky court, Commonwealth ex rel. Transportation Cabinet, Department of Highways v. Wilson Furniture, Inc., 205 S.W.3d 267 (Ky. Ct. App. 2006), states: "However, it appears that Kentucky no longer follows the rule of Drury," and the court relied on both Brown v. Commonwealth, 174 S.W.3d 421, 430 (Ky. 2005), and Adkins v. Commonwealth, 96 S.W.3d 779, 796 (Ky. 2003).53 The court explained the following.

In Brown v. Commonwealth, 174 S.W.3d 421 (Ky.2005), the court held that

[i]t is well settled that "[t]o obtain a new trial because of juror mendacity, 'a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.'"

Wilson Furniture, 205 S.W.3d at 268. The Kentucky court also relied on the language in McDonough Power, 464 U.S. at 555, and its reliance upon (1) innocent and inaccurate statements of jurors and (2) a greater responsibility placed on counsel to obtain information during voir dire with counsel being more aware of potential juror misunderstanding during voir dire.54

¶36 The circumstances of a juror's litigation history, whether the litigation history is material, whether an inaccurate juror statement is intentional, whether the misstatement can be attributed to juror error, and whether the misstatement can be attributed to counsel's choice of language are all factors which have been considered, along with others, when examining juror misconduct after Stillwell and in a context of adjudicating prejudice to a party and the absence of a fair trial. The phrase "fair trial" does not expressly occur in the language of 12 O.S. § 651(2)55 as it does in § 651(1),56 and the term "prejudice" also does not appear in § 651(2). However, after Stillwell the Court has used the terms "fair trial" and "prejudice" in the context of explaining when a new trial is proper based upon application of § 651(2) and a claim of juror misconduct.

¶37 For example, in Mullinix Construction Co. v. Myers,57 a claim was made that two jurors failed to answer truthfully during voir dire and a party sought 12 O.S. § 651(2) relief. We stated the following.

This examination of the jurors is all set out in 148 pages of the case-made. The wife of a juror was called as a witness and it appears that when he came home one night during the trial he told her about the case. She appears to have told him to reach a just decision on the evidence before him. While not proper, there was nothing about this that was prejudicial to defendant.

A careful reading of the evidence at this hearing on misconduct of the jury shows that the extensive investigation of the jury failed completely to prove that any juror had any bias or prejudice that would have prevented them from rendering a fair and impartial verdict in the case. None of the jurors knew any of the parties in the case. Nor did they know any of the attorneys for either party.

Mullinix Const. Co., 358 P.2d at 192. Six years after Stillwell this language in Mullinix examined whether juror misconduct "was prejudicial to defendant," and if evidence showed "any bias or prejudice that would have prevented them from rendering a fair and impartial verdict in the case." We concluded our opinion with the observation "any misconduct of the jury is not shown to have resulted in any prejudice to defendant," and we affirmed the trial court's denial of a motion for new trial.58

¶38 More recently in 2012, in Fields v. Saunders,59 we again discussed a juror's bias and prejudice, and also a juror's intentional deceit during voir dire. We examined the evidence presented for the purpose of a motion for new trial. The evidence showed "the juror in question entertained bias against the plaintiffs' race and their right to recover under the appropriate burden of proof," and the juror "deliberately concealed such bias upon voir dire in order to participate in rendering verdicts consistent with such bias."60 We noted the juror's answers in a questionnaire included statements that he had no bias against the plaintiffs.61

¶39 If the proper standard requiring a new trial pursuant to Stillwell was simply an untruthful answer, or two untruthful answers, on voir dire as suggested by Beyrer herein, then Beyrer would limit our discussion of bias, prejudice, and intentional conduct by the juror in Fields as proper on the sole issue whether an untruthful answer occurred on voir dire. The evidentiary record in Fields showed a juror's conduct prejudicial to a party by creating an unfair trial, and we stated a reliance on this record for the decision. We decline to adopt Beyrer's view of Fields.

¶40 In James v. Tyson Foods, Inc.,62 another opinion from 2012, the jurors gave incomplete, misleading, and/or false answers on juror questionnaires. Some of the jurors declined to answer questions in the questionnaires by leaving some blank, answering "N/A," and making facially insufficient replies. The attorneys were advised in the pre-trial order that they could not ask questions already covered in juror questionnaires. We stated the attorneys were effectively barred from investigating any juror's answer or investigating answers indicating juror misconduct. We also stated a "juror's concealment, whether intentional or accidental, of information pertinent to prejudice or bias, coupled with the parties' inability to question the jurors on relevant issues is sufficient to warrant a new trial."63

¶41 In James, the fact of intentional or accidental concealment was not dispositive, but rather the trial court barring investigation by the attorneys on voir dire regardless of the content in answers provided by the prospective jurors. A public policy discussed in McDonough Power Equip., Inc. v. Greenwood, supra, which placed a greater responsibility on counsel to obtain information during voir dire as a means to determine juror bias and prejudice was restricted to the point of a complete denial by the trial court's order. We decline to read James as stating a juror's misconduct need not be examined to determine whether it was intentional or accidental. James recognizes the importance of counsel's role for voir dire.

¶42 The parties also discuss a third opinion from 2012, Ledbetter v. Howard,64 where we explained a juror could not use her professional expertise to override the testimony presented when she had affirmed on voir dire she would not use her expertise to contradict the evidence.65 We stated the following.

Counsel were entitled to rely on the foreperson's guaranty to the trial court that she would not allow her professional expertise to override the testimony presented. There is admissible evidence to the contrary. The foreperson made improper statements, involving extraneous information, intending to sway the jury toward a defendant's verdict. Under these facts, we determine that the plaintiffs are entitled to a new trial.

Ledbetter, 2012 OK 39, ¶ 20, 276 P.3d at 1038. We examined the evidence to determine if the juror's misconduct and statements had a prejudicial effect on the verdict, and we characterized her statements for that purpose as intentional.

¶43 The parties also discuss two other points from Ledbetter. The first is the statement: "Neither does this cause stand for the proposition that a single false answer to a question on voir dire requires or supports the ordering of a new trial." Id. at ¶ 18, 276 P.3d at 1037. Beyrer states the juror in our case did not make a single misstatement but two misstatements, and this language in Ledbetter does not apply to Beyrer's case. Ledbetter did not create a rule that one misstatement is insufficient but more than one is sufficient to obtain a new trial. Her argument presents a false dichotomy, because the number of misstatements is not determinative, but merely one factor when a court adjudicates the nature of conduct as misconduct and the effect of misconduct on either (1) a party's opportunity to inquire on voir dire or (2) the verdict. The parties also discuss Ledbetter's quotation where we distinguished Dominion Bank of Middle Tennessee v. Masterson, 1996 OK 99, 928 P.2d 291.66

¶44 In Dominion Bank the jury foreman had previously been a party to twenty-one (21) lawsuits which were not disclosed, and in one of these he had a judgment against him followed by collection of the entire judgment by garnishment against his bank account. This juror stated during voir dire he previously had been a party to one lawsuit, an easement dispute, and he knew neither the parties nor the attorneys in the Dominion Bank controversy. However, one of the attorneys in Dominion Bank was also the attorney of record for the plaintiff who obtained the judgment and garnishment collection against the Dominion Bank juror in the previous lawsuit.

¶45 In Dominion Bank we explained the Court need not determine if the juror was biased against one the parties, or if the juror "had some influence upon the other jurors."67 We relied on Stillwell v. Johnson, supra, and concluded: "It is enough that Masterson [a party] was deprived of an opportunity to delve deeper into Mr. Sager's qualifications [as a juror] during voir dire, and under Oklahoma case law, is entitled to a new trial."68 We also stated a party need not show "intentional deceit" to obtain a new trial; but willful falsehood may intensify the wrong done by the juror.69

¶46 We explained "the juror's failure to provide complete and accurate information as to his involvement in litigation" deprived a party of the opportunity to question the juror further about the effect of the juror's previous twenty-one (21) lawsuits, and further deprived the party of an opportunity to determine whether the juror could impartially consider the case.70 We then stated: "Where . . . the juror has had judgments entered against him and garnishment proceedings instituted by counsel of one of the parties to the case he is to hear, it is especially important that the juror's bias or partiality be determined."71 This language refers to bias or partiality to have been determined by counsel on voir dire. We stated a party: "need not prove that the jury's verdict was unjust or the product of prejudice or bias. It is enough that the need to further question the juror on his qualifications was concealed whether intentionally or not."72

¶47 Dominion Bank relied on our opinion in Stillwell v. Johnson, supra, and its adoption of both the Kansas opinion in Kerby v. Hiesterman, supra, and the Kentucky opinion in Drury v. Franke, supra. Dominion Bank did not address the growth of the common law in Kansas and Kentucky and the court opinions in those States which applied Kerby and limited Drury. This growth in the common law came after our use of Kerby and Drury as persuasive authority, and while we are not required to implement these more recent common law principles from the courts in Kansas and Kentucky, as in a circumstance of Oklahoma statutory adoption with a prior judicial interpretation,73 we may use them to the extent they are persuasive as authority in our controversy74 and when consistent with our more recent precedential authority and the statutory language in 12 O.S. § 651.

¶48 In Dominion we also relied on Kansas City Southern Railway Company v. Black,75 a case involving injuries to a worker. One juror failed to disclose that her son had been hurt in a work-related accident and had recovered damages for his injuries, one juror failed to disclose he was related by marriage to the plaintiff, and another juror failed to disclose he had been released from services with the defendant after sustaining a work-related injury. We stated "the failure of the jurors selected in this case to answer questions of them on their voir dire examination deprived the defendant of a fair trial."76 The fairness of the trial was related to the lack of a juror's correct answers on voir dire.

¶49 A few years after Kansas City Southern Ry. Co. v. Black, supra, we distinguished it in Love v. Harvey,77 when a juror did not disclose she was being treated for a whiplash injury caused by an automobile collision. She served as a juror in an automobile collision case. The juror did not talk to a lawyer or seek any legal advice concerning her motor vehicle collision, she did not file a legal action concerning her injury, and she was not a party to a legal action involving her motor vehicle collision. We noted the juror answered truthfully the questions which were asked the panel as a whole, and "there is not the evidence of deliberate concealment and possible prejudice here, that there was in the Black case."78

¶50 Unlike the circumstances in Love v. Harvey, supra, D. K. was a named defendant in a legal action; but like the circumstances in Love, D. K. had no other participation in a legal proceeding. Unlike the circumstances in Love, D. K. did not answer two questions which, if properly understood by D. K. as intended by counsel on voir dire, would have revealed his litigation history. Similar to the circumstances in Love, there is no record of any economic detriment suffered by D. K. as a result of former litigation.

¶ 51 The parties also discuss Neumann v. Arrowsmith,79 where we stated "a material omission can be just as powerful an untruth as an affirmative material misstatement," and we relied on Dominion Bank of Middle Tennessee v. Masterson, supra, for the observation that a juror's "omission, even if accidental concerning a juror's possible bias, entitled the moving party to a new trial."80 Neumann involved a medical malpractice action and a prospective juror who did not disclose he had recently been an unsuccessful plaintiff in an action alleging tort claims, and we noted an article collecting opinions where a juror in a personal injury action had previous legal claims for personal injury which were undisclosed on voir dire.81

¶52 Since Stillwell, several courts, as in McDonough Power, supra, and those relying on its language, have imposed a duty of greater diligence on counsel to craft questions during voir dire to elicit answers for information they deem to be necessary to obtain a fair trial for a party. This increased duty also appears to occur in some cases involving an observation as to whether the juror's omission or misstatement is viewed as an innocent misunderstanding in response to a voir dire question that is ambiguous or containing polysemous terms. We need not examine voir dire questions for uncertainty of meaning or determine whether D. K.'s silence to the two questions was an innocent misunderstanding. We need not determine in this case whether a juror's innocent misunderstanding of a voir dire question may be juror misconduct in some circumstances for the purpose of 12 O.S. § 651. We need not determine whether plaintiff should have been more diligent on voir dire to obtain information concerning the prior litigation history of prospective jurors. Instead, we view this controversy as dispositive on the issue whether the juror's prior litigation history was material to Beyrer's cause of action.

¶53 Neumann used language stating the omission or misstatement must be material. Beyrer argues a juror's history as a named defendant is always material and relies upon Stillwell's adoption of the Kansas opinion in Kerby. However, Kansas courts applying Kerby have examined the nature of the prior cause of action when the juror was a defendant as one factor to consider when adjudicating a claim of juror misconduct for a juror failing to disclose a prior status as a defendant. The language of 12 O.S. § 651 states the juror misconduct sufficient for a new trial must be "affecting materially the substantial rights of the party." We agree juror misconduct must have been material for the purpose of 12 O.S. § 651. We agree the nature of the prior litigation of the juror must be examined and a court determine if it is material when the claim has been made that such history has an improper impact or influence on the trial before the court due to the juror's silence or misstatement on the issue during voir dire.

¶54 D. K. was a named defendant in a motor vehicle tort case and Beyrer's case involved tort premises liability. However, D. K.'s motor vehicle case occurred fourteen years earlier when he was minor, he did not talk to a lawyer about the motor vehicle case, and the record shows no participation by him in any aspect of the case other than as a named defendant of minor age. The record shows the motor vehicle case was settled shortly after it was filed. There is nothing in the record to suggest D.K. suffered any economic detriment from the lawsuit. The motor vehicle case was the only prior litigation involving D. K. in any capacity.

¶55 The trial court ruled the "alleged juror misconduct is insufficient to warrant a new trial." We agree on the single ground that D. K.'s omission in stating his prior motor vehicle case in response to the two questions on voir dire did not involve a material omission. The order denying the motion for new trial is affirmed.

VI. Conclusion

¶56 We hold: When a trial court adjudicates a motion for new trial based upon a juror's silence during voir dire concerning the juror's litigation history, the trial court may examine the nature of the juror's prior litigation to determine if it is material to the action then before the trial court. We hold a juror's conduct did not rise to conduct "affecting materially the substantial rights of the party" when the juror failed to state on voir dire in a premises liability controversy his status as a named defendant in a motor vehicle case fourteen years earlier when (1) he was a minor, (2) he did not talk to a lawyer or participate in the prior action in any manner, and (3) the record shows both the prior action was settled shortly after filing and no economic detriment suffered by the juror as a result of the litigation.

¶57 The opinion of the Court of Civil Appeals is withdrawn from publication. The opinion is vacated except for that portion adjudicating the issue of costs as explained herein. The order of the District Court denying the motion for new trial is affirmed, and the order granting costs is reversed in accordance with the opinion of the Court of Civil Appeals. The matter is remanded for proceedings consistent with this opinion.

¶58 CONCUR: DARBY, C.J.; KAUGER, WINCHESTER, EDMONDSON, COMBS, and GURICH, JJ.

¶59 CONCUR IN RESULT: KANE, V.C.J.; ROWE and KUEHN, JJ.

FOOTNOTES

1 Young v. Station 27, Inc., 2017 OK 68, ¶ 7, 404 P.3d 829, 833 ("Alleged error must be raised in the trial court to preserve the issue as a ground urged as error on appeal."); Gallagher v. Enid Regional Hosp., 1995 OK 137, 910 P.2d 984, 986 (during certiorari review the Court noted appellants' claim raised for the first time on certiorari and applied the well-known proposition "that this Court will not entertain a theory for reversal advanced for the first time on appeal"); Ledbetter v. Howard, 2012 OK 39, n.1, 276 P.3d 1031, 1033 (issue not reviewed on certiorari due to failure to preserve error in trial court).

2 Conterez v. O' Donnell, 2002 OK 67, 58 P.3d 759 (the Court dismissed the appeal on certiorari and explained an alleged prejudicial error in the trial court required an appealable decision for the Court to review).

3 Hensley v. State Farm Fire & Cas. Co., 2017 OK 57, ¶ 14, 398 P.3d 11, 16 (Court noted an appellant's burden to present a record on appeal demonstrating error in the trial court's decision, and facts before the trial court were not before the Court for its certiorari review "unless they also appear in the material actually submitted to this Court."); Johnson v. CSAA Gen. Ins. Co., 2020 OK 110, ¶ 33, 478 P.3d 422, 437 ("an issue on appeal will not be decided when unsupported by an appellate record necessary for such review").

4 Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C., 1995 OK 66, n. 3, 899 P.2d 621, 623 (Court noted appellants' failure to include in their petition in error an assignment of error which was raised on certiorari, and the Court declined to review the issue. citing (Markwell v. Whinery's Real Estate, Inc., 1994 OK 24, 869 P.2d 840, 843)); Am. Nat. Res., LLC v. Eagle Rock Energy Partners, LP, 2016 OK 67, 374 P.3d 766, 771-72 (in a Rule 1.36 appeal, Court declined to review issues raised on certiorari which were not raised in the petition in error and when the petition in error was not amended); In re L.M.A., 2020 OK 63, n. 6, 466 P.3d 559, 563 ("An appellate brief may amend assignments of error raised in a petition in error provided they were preserved in the trial court.").

5 Osage Nation v. Bd. of Cty. Comm'rs of Osage Cty., 2017 OK 34, n. 20, 394 P.3d 1224, citing Worsham v. Nix, 2006 OK 67, ¶ 28, 145 P.3d 1055, 1064 (failure to brief an issue with authority is a waiver of an assignment of error relating to that issue); Farley v. City of Claremore, 2020 OK 30, ¶ 20, 465 P.3d 1213, 1225 (an appeal controlled by Okla. Sup. Ct. R. 1.36, summary judgment and certain dismissals, the briefs in the appellate court are those which were considered by the trial court when it issued the order reviewed in the 1.36 appeal).

6 See, e.g., State ex rel. Dep't of Transp. v. Little, 2004 OK 74, ¶ 26, 100 P.3d 707, 721 (appellate opinion vacated in part, trial court judgment affirmed in part and reversed in part, stating "this court will not review any issue decided adversely to a party by the Court of Civil Appeals unless that issue is retendered for review by certiorari"); State ex rel. Dep't of Pub. Safety v. 1985 GMC Pickup, etc., 1995 OK 75, 898 P.2d 1280, 1284-85 (issue in petition for certiorari without argument and authority need not be addressed by the Court).

7 Barnett v. Barnett, 1996 OK 60, n.12, 917 P.2d 473, 477 citing (Hough v. Leonard, 1993 OK 112, 867 P.2d 438, 445).

8 May--Li Barki, M.D., Inc. v. Liberty Bank & Tr., Co., 1999 OK 87, ¶ 7 & n.17, 20 P.3d 135, 143 (supp. opin. on rehearing) (citing Hough v. Leonard, 1993 OK 112, 867 P.2d at 445-446 (when certiorari review vacates an opinion by the Court of Civil Appeals a party may receive during certiorari review a sua sponte examination of all issues which, though properly preserved and briefed on appeal, were not addressed by the intermediate appellate court)).

9 See, e.g., Stites v. DUIT Constr. Co., 1995 OK 69, 903 P.2d 293 (during certiorari review the appeal was dismissed as untimely commenced).

10 See, e.g., Beville v. Curry, 2001 OK 1, ¶ 11, 39 P.3d 754, 759 (whether a party's actions were against public policy presented a controversy the Court could resolve on a theory not raised on certiorari but supported by the record).

11 See, e.g., Jones v. Jones, 1980 OK 85, 612 P.2d 266, 268-69 (when appellant sought appellate review of a decree granting a divorce and division of property and appellee simultaneously sought post-decree supervisory writ relief to compel the trial judge in the same trial court controversy to hear a request for alimony and counsel fees during appeal, Court consolidated appeal with writ proceeding and made requested extraordinary relief part of the appellate mandate), relying on Tisdale v. Wheeler Bros. Grain Co., 1979 OK 94, 599 P.2d 1104, 1106-07 (review of a post-judgment decision within a principal appeal arising from the same trial court controversy was proper when review involved issues ancillary to the pending appeal).

12 Consolidation for the sole purpose of one opinion addressing more than one controversy does not consolidate causes of action or controversies, and the opinion is filed in each of the separate proceedings before the Court. See, e.g., State ex rel. Okla. Bar Ass'n v. Oliver, 2015 OK 33, ¶ 14, 350 P.3d 146, 149 (consolidation for the purpose of one opinion and Clerk directed to file the opinion in each of the two disciplinary proceedings); In re Guardianship of Berry, 2014 OK 56, n. 1, 335 P.3d 779, 783 (opinion adjudicating an appeal was enforced upon issuance of mandate while same opinion adjudicating a non-consolidated companion original writ controversy could be enforced upon filing of the opinion); Okla. Dep't of Sec. ex rel. Faught v. Blair, 2010 OK16, n.1, 231 P.3d 645 (Court declined to consolidate appeals for any purpose other than to adjudicate appeals by a single opinion when some of the appeals involved different parties and different trial court cases).

13 Myers v. Mo. Pac. R.R. Co., 2002 OK 60, n.7, 52 P.3d 1014, 1020 ("Even without its own certiorari petition, the successful party can advance any arguments which would demonstrate the correctness of COCA's disposition.") citing May--Li Barki, M.D. v. Liberty Bank & Trust Co., supra note 8.

14 See, e.g., Farley v. City of Claremore, 2020 OK 30, ¶ 20, 465 P.3d 1213, 1225 ("An appellee may raise a legal issue in support of the correctness of the trial court's judgment and the relief actually granted when the issue is supported by the record on appeal."); In re M.K.T., 2016 OK 4, ¶ 88, 368 P.3d 771, 799 (an appellee may make legal argument in support of a District Court's judgment or decree in an appellate answer brief when the argument is proper for facts shown in the certified appellate record).

15 See, e.g., Okla. Ass'n of Broadcasters, Inc. v. City of Norman, 2016 OK 119, ¶ 32, 390 P.3d 689, 697 (The Court of Civil Appeals' opinion is vacated in part and remains controlling as to issues not presented in the petition for certiorari and addressed by this Court.); Cooper v. Booher, 2004 OK 40, ¶ 11, 93 P.3d 19, 22 ("Since no party sought certiorari with respect to any other portion of the opinion of the Court of Civil Appeals, we leave undisturbed the balance of that opinion."); Mosier v. Okla. Prop. & Cas. Ins. Guar. Ass'n, 1994 OK 145, 890 P.2d 878, 881 (Court of Civil Appeals' opinion was vacated in part and non-vacated portion "stands as the settled law of the case").

16 See, e.g., Nichols v. Mid-Continent Pipe Line Co., 1996 OK 118, 933 P.2d 272, 281 (unsuccessful plaintiffs on an assignment of error before the Court of Appeals failed to seek certiorari to review an the erroneous reduction of damages made by the trial court; and the Supreme Court noted settled law of the case kept this unsuccessful disposition intact although the Court vacated the appellate opinion in whole, which left intact a portion of the trial court judgment on the reduction-of-damages issue during certiorari).

17 See, e.g., Wilson v. Webb, 2009 OK 56, n.13, 221 P.3d 730, 735 (cause was remanded to the Court of Civil Appeals for adjudication of properly preserved issues not previously addressed on appellate review citing (Lerma v. Wal--Mart Stores, Inc., 2006 OK 84, ¶ 5 n.2, 148 P.3d 880; Hough v. Leonard, 1993 OK 112, ¶ 1, 867 P.2d 438)).

18 1995 OK 131, 907 P.2d 1067.

19 Id., 907 P.2d at 1074.

20 Taracorp, Ltd. v. Dailey, 2018 OK 32, n.4, 419 P.3d 217, 219 (quoting 12 O.S.Supp. 2013, Ch.15, App.1, Okla. Sup. Ct. Rule 1.200 (eff. Aug. 1, 2013) ("The Supreme Court retains the power to order opinions of the Court of Civil Appeals withdrawn from publication")).

21 Moran v. City of Del City, 2003 OK 57, 77 P.3d 588.

22 12 O.S.Supp. 2013, Ch.15, App. 1, Okla. Sup. Ct. Rule 1.200 (eff. Aug. 1, 2013). See also Mosier v. Okla. Prop. & Cas. Ins. Guar. Ass'n, supra note 15.

Opinions released for publication by the Court of Civil Appeals bear the notation "Released for publication by order of the Court of Civil Appeals", and shall be considered to have persuasive effect. Okla. Sup. Ct. Rule 1.200. Any such opinion, however, bearing the notation "Approved for publication by the Supreme Court" has been so designated by the Supreme Court pursuant to 20 O.S. § 30.5, and shall be accorded precedential value. Okla. Sup. Ct. R. 1.200.

23 Grisham v. City of Oklahoma City, 2017 OK 69, n. 4, 404 P.3d 843, 846 (citing In re K.S., 2017 OK 16, ¶ 7, 393 P.3d 715, 717); Lerma v. Wal--Mart Stores, Inc., 2006 OK 84, ¶ 6, 148 P.3d 880, 883; Jones, Givens, Gotcher & Bogan v. Berger, 2002 OK 31, ¶ 5, 46 P.3d 698, 701 (citing State v. Vaughn, 2000 OK 63, 11 P.3d 211; Soldan v. Stone Video, 1999 OK 66, 988 P.2d 1268).

24 Strubhart v. Perry Mem. Hosp. Tr. Auth., 1995 OK 10, 903 P.2d 263, 269-270 ("when the new trial is granted by the same judge who tried the case, a much stronger showing of error or abuse of discretion is required than if the party was appealing a refusal to grant a new trial"); State ex rel. Dep't of Highways v. Collins, 1971 OK 25, 482 P.2d 583, 584 ("it yet remains established under our law that a greater showing of abuse of discretion must be made to reverse a grant of a new trial, than is required to reverse the denial of one").

25 Grisham, 2017 OK 69, n. 5, 404 P.3d at 846 (citing Gowens v. Barstow, 2015 OK 85, ¶ 11, 364 P.3d 644, 649); cf. Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194, cert. den. 528 U.S. 1188, 120 S.Ct. 1242, 146 L.Ed.2d 100 (2000) (when granting or denying a petition to vacate an abuse of judicial discretion occurs when the discretion is an act to an end or purpose not justified by, and clearly against, reason and evidence).

26 Indep. Sch. Dist. No. 52 of Okla. Cty. v. Hofmeister, 2020 OK 56, ¶ 17, 473 P.3d 475, 485 (The appellate abuse-of-discretion standard for reviewing a motion for new trial uses a de novo review when examining the correctness of an alleged erroneous conclusion of law.).

27 Kluver v. Weatherford Hosp. Auth., 1993 OK 85, 859 P.2d 1081, 1083 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary independent and non-deferential authority to re-examine a trial court's legal rulings."); State ex rel. Okla. State Bd. of Med. Licensure and Supervision v. Rivero, 2021 OK 31, ¶ 42, 489 P.3d 36, 53 (appellate review of a question of law requires an "independent and non-deferential examination applying a de novo standard"); In re Copperfield's Estate, 1932 OK 471, 12 P.2d 490, 492 (defining the phrase de novo as "anew" or "a second time" when used in the phrase trial de novo (quoting Parker v. Lewis, 1915 OK 140, 147 P. 310, 311)).

28 Christian v. Gray, 2003 OK 10, ¶ 43, 65 P.3d 591, 608 (citing Scoufos v. State Farm Fire & Cas. Co., 2001 OK 113, ¶ 1, 41 P.3d 366, 367, and explaining that although an order was reviewed for abuse of discretion, "de novo standard applies to issue of whether the court applied the correct legal standard.").

29 Lierly v. Tidewater Petroleum Corp., 2006 OK 47, ¶ 16, 139 P.3d 897, 903.

30 Fields v. Saunders, 2012 OK 17, ¶ 1, 278 P.3d 577, 579; see, e.g., In re A.M. & R.W., 2000 OK 82, ¶ 6, 13 P.3d 484, 486-87 ("In passing upon a claim that the procedure used in a proceeding to terminate parental rights resulted in a denial of procedural due process, we review the issue de novo."); In re Estate of Bell-Levine, 2012 OK 112, ¶ 5, 293 P.3d 964, 966 (whether statute violated the Oklahoma Constitution "presents a question of law, reviewable under the de novo standard").

31 Cf. Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, ¶ 10, 371 P.3d 477, 482 (Court noted a constitutional claim or application of a constitutional principle may hinge or be dependent upon an issue of fact); Time, Inc. v. Firestone, 424 U.S. 448, 463-64, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) (a question of fact may have constitutional significance and State court's finding of fact may receive deference in reviewing a constitutional claim); Fiske v. Kansas, 274 U.S. 380, 385--86, 47 S.Ct. 655, 656--657, 71 L.Ed. 1108 (1927) (Court reviews a finding of fact by a State court where a federal right has been denied as the result of a finding shown by the record to be without evidence to support it; or where a conclusion of law as to a federal right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the federal question, to analyze the facts.); Martin H. Redish & William D. Gohl, The Wandering Doctrine of Constitutional Fact, 59 Ariz. L. Rev. 289 (2017) (discussing the scope of the constitutional fact doctrine); Henry P. Monaghan, Constitutional Fact Review, 85 Colum. L. Rev. 229 (1985) (constitutional fact doctrine and judicial review of the adjudicative facts which are decisive of a particular constitutional claim).

32 See, e.g., Sides v. John Cordes, Inc., 1999 OK 36, ¶ 16, 981 P.2d 301, 307 ("The findings of a trial court sitting without a jury in a case of legal cognizance are to be given on review the same weight as that which would be accorded the verdict of a well-instructed jury."); Krumme v. Moody, 1995 OK 140, 910 P.2d 993, 995 (an appellate court will not disturb trial court findings of fact in equity unless they are clearly contrary to the weight of the evidence); Miami Bus. Serv., LLC. v. Davis, 2013 OK 20, ¶ 10, 299 P.3d 477, 483 (trial court's findings of fact on motion to disqualify counsel reviewed for clear error).

33 See, e.g., I.T.K. v. Mounds Pub. Schs., 2019 OK 59, ¶ 11, 451 P.3d 125, 131-32 (Court states a clearly erroneous standard applies to review of a finding of fact on a jurisdictional issue in an action at law, and also explains an erroneous finding of fact by the District Court is insufficient to require a reversal on appeal when the actual adjudication by the District Court includes those facts necessary to provide a sufficient evidentiary basis to support the judgment.).

34 See, e.g., Pub. Serv. Co. of Okla. v. State ex rel. Okla. Corp. Comm'n, 2005 OK 47, ¶ 8, 115 P.3d 861, 869-70 (discussing appeals from Corporation Commission, Okla. Const. Art. 9 § 20, and substantial evidence standard).

35 Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 19, 396 P.3d 210, 218 (pursuant to 12 O.S. § 991 if a party files a motion for new trial, then the assignments of error in a subsequent appeal are limited to those raised in the motion before the trial court); City of Broken Arrow v. Bass Pro Outdoor World, L.L.C., 2011 OK 1, ¶ 11, 250 P.3d 305, 311 (assignments of error in a subsequent appeal are limited to those raised in the motion before the trial court, and rule applied to a motion to reconsider construed as a motion for new trial); Slagell v. Slagell, 2000 OK 5, 995 P.2d 1141 (rule applied to dismiss appeal); Fed. Corp. v. Indep. Sch. Dist. No. 13 of Pushmataha Cty., 1978 OK CIV APP 55, 606 P.2d 1141, 1144 (approved for publication by the Supreme Court) (rule explained as "a continuation of a well-established principle of appellate practice").

36 Carraco Oil Co. v. Roberts, 1964 OK 194, 397 P.2d 126, 131 (trial court's general judgment includes necessary findings).

37 U.S. Mortg. v. Laubach, 2003 OK 67, ¶¶ 27-30, 73 P.3d 887, 899-900. The parties do not brief, and we need not address, the hypothetical issue when express findings are required. Tulsa Cty. Budget Bd. v. Tulsa Cty. Excise Bd., 2003 OK 103, n.31, 81 P.3d 662, 672 ("This Court does not issue advisory opinions or answer hypothetical questions.").

38 O.R. at 155, Order (June 14, 2019).

39 An adjudication of fact is based upon the fact appearing of record or when the fact is deemed to appear of record for a purpose related to the adjudication. See, e.g., Christian v. Gray, 2003 OK 10, ¶ 52, 65 P.3d 591, 612 (trial court commits an abuse of discretion when it decides an issue based upon a fact not of record); I.T.K. v. Mounds Pub. Schs., 2019 OK 59, n. 6, 451 P.3d 125, 131 (noting example of an order granting a motion to dismiss raising a jurisdictional issue when allegations of a petition are deemed as true); Farley v. City of Claremore, 2020 OK 30, ¶ 13, 465 P.3d 1215, 1222 (discussing judicial notice of facts for the purpose of res judicata in the context of a motion to dismiss).

40 Harn v. Interstate Bldg. & Loan Co., 1920 OK 39, 188 P. 343, 345, appeal dismissed, 255 U.S. 563, 41 S.Ct. 375, 65 L.Ed. 787 (1921) (If a party desired a finding not within a general finding, then the party should have made a timely request, and having failed to do so the party may not challenge a finding as incomplete.); cf. Barber v. Flynn, 1980 OK 175, 628 P.2d 1151, 1153 (when discussing an issue not properly assigned as error on appeal, the Court nevertheless observed that a party's failure to call attention to the sufficiency of a finding when a trial court made findings, and this failure waived the party's right to question the finding on appeal).

41 Appellant argues the juror "twice chose to withhold critical litigation information," and did not disclose information "on two separate occasions," in response to two questions with one question in the form of a compound question which could have elicited a third response from the juror. Appellant's Brief-in-Chief, pp. 6, 10; Appellant's Answer to Petition for Certiorari, p. 2.

42 Voir dire is a procedure designed to give the parties an opportunity to explore opinions and personal knowledge of the jurors, and give the parties a fair and impartial jury. Woodruff v. State, 1993 OK CR 7, 846 P.2d 1124, 1132, cert. denied, 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993). Voir dire, or "to speak the truth," in this circumstance is an examination of the jurors at a preliminary stage of a trial. Voir Dire, Blacks Law Dictionary 1746 (4th ed.1951).

43 State v. Durnam, 73 Minn. 150, 75 N. W. 1127, 1129 (1898); cf. State v. Jackson, 27 Kan. 581, 584, 41 Am. Rep. 424 (1882) ("It has also been held that the right to object because of the incompetency of a juror, may be waived in civil cases, even where the parties do not know of such incompetency until after the trial.").

44 12 O.S.2011, § 651 states in part: "The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party: . . . 3. Accident or surprise, which ordinary prudence could not have guarded against;. . . 7. Newly-discovered evidence, material for the party applying, which could not, with reasonable diligence, have been discovered and produced at the trial; 8. Error of law occurring at the trial, and objected to by the party making the application. . . ."

45 Johnson v. McCullough, 306 S.W.3d 551, 555 (Mo. 2010) (en banc).

46 Kerby v. Hiesterman, 162 Kan. 490, 178 P.2d at 199.

47 Stover v. Superior Indus. Int'l Inc., 29 Kan. ApP.2d 235, 29 P.3d 967, 973 (2000).

48 Stover, 29 Kan. ApP.2d at 243-44, 29 P.3d at 973.

49 Stover, 29 Kan. ApP.2d at 244, 29 P.3d at 973.

50 King v. Casey's Gen. Stores, Inc., 57 Kan. ApP.2d 392, 400-01, 450 P.3d 834, 841 (2019).

51 King, 57 Kan. ApP.2d at 403, 450 P.3d at 842 (citing State v. Jenkins, 269 Kan. 334, 338-39, 2 P.3d 769 (2000); Kerby, 162 Kan. at 496, 178 P.2d at 198-99; Bell v. State, 46 Kan. ApP.2d 488, 494, 263 P.3d 840, 844-45 (2011)).

52 Stillwell, 1954 OK 189, 272 P.2d at 368.

53 Wilson Funiture, 205 S.W.3d at 268-69.

54 Id., at 269.

55 12 O.S.Sup.2011, § 651(2) states in part: "misconduct of the jury or prevailing party." See ¶ 27, supra.

56 12 O.S.2011, § 651(1) states in part: "The former verdict, report, or decision shall be vacated, and a new trial granted, . . .for any of the following causes, affecting materially the substantial rights of the party: 1. Irregularity in the proceedings . . . by which the party was prevented from having a fair trial . . . ." (emphasis added).

57 1960 OK 241, 358 P.2d 187.

58 Id., 1960 OK 241, 358 P.2d at 193.

59 2012 OK 17, 278 P.3d 577.

60 Id., ¶ 6, 278 P.3d at 580-81.

61 Id., ¶ 5, 278 P.3d at 580.

62 2012 OK 21, 292 P.3d 10.

63 Id., ¶ 30, 292 P.3d at 19.

64 2012 OK 39, 276 P.3d 1031.

65 Id., ¶ 2, 276 P.3d at 1033.

66 Ledbetter, 2012 OK 39, ¶ 19, 276 P.3d at 1037.

67 Dominion Bank, 1996 OK 99, 928 P.2d at 293.

68 Id.

69 Id., 1996 OK 99, 928 P.2d at 293 (discussing Stillwell v. Johnson, supra, and quoting Drury v. Franke, supra).

70 Id., 928 P.2d at 294.

71 Id.

72 Id., 928 P.2d at 294.

73 See, e.g., Lee Way Motor Freight, Inc. v. Welch, 1988 OK 121, n.14, 764 P.2d 191, 195 (when our Legislature has expressly adopted a statute from another State then the Legislature has also adopted that State's judicial construction of the statute which occurred prior to the adoption, and the legislative adoption of judicial construction "has the same effect as though it had been expressly carried into the body of our legislative law") (citing In re Estate of Speake, 1987 OK 61, n. 5, 743 P.2d 648, 650); Brook v. James A. Cullimore & Co., 1967 OK 251, 436 P.2d 32, 34 (presumed adoption of judicial construction of foreign statute is judicial construction made by highest court in the foreign State); Valley Vista Dev. Corp. v. City of Broken Arrow, 1988 OK 140, n. 22, 766 P.2d 344, 349 (judicial construction by foreign State court was not adopted by the Oklahoma Legislature when the judicial construction occurred after the date of the Oklahoma adoption, and the judicial construction was persuasive authority).

74 See, e.g., Leak-Gilbert v. Fahle, 2002 OK 66, ¶ 10, 55 P.3d 1054, 1057 (Court characterized party's reliance on persuasive authority when citing opinions from Washington and Connecticut); Bishop v. Takata Corp., 2000 OK 71, ¶ 15, 12 P.3d 459, 464 (persuasive authority invoked when party cited opinions from Minnesota and Texas); Haynes, v. Alverno Heights Hospital, 1973 OK 122, 515 P.2d 568, 570 (Court cited a Georgia court opinion as persuasive authority for affirming an Oklahoma trial court ruling).

75 1964 OK 192, 395 P.2d 416.

76 Id., 1964 OK 192, 395 P.2d at 417.

77 1968 OK 176, 448 P.2d 456.

78 Id., 448 P.2d at 460.

79 2007 OK 10, 164 P.3d 116.

80 Id., 2007 OK 10, ¶¶ 11-12, 164 P.3d at 120.

81 Id., 2007 OK 10, n.15, 164 P.3d at 120 (citing Nadel, "Effect of Juror's False or Erroneous Answer on Voir Dire in Personal Injury or Death Action as to Previous Claims or Actions for Damages by Himself or His Family," 38 A.L.R.4th 267 (1985)).

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Criminal Appeals Cases
 CiteNameLevel

 1993 OK CR 7, 846 P.2d 1124, WOODRUFF v. STATEDiscussed
Oklahoma Court of Civil Appeals Cases
 CiteNameLevel

 1978 OK CIV APP 55, 606 P.2d 1141, FEDERAL CORP. v. INDEP. SCH. DIST. NO. 13, PUSHMATAHA CO.Discussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1987 OK 61, 743 P.2d 648, 58 OBJ 1982, Estate of Speake, Matter ofDiscussed
 1988 OK 121, 764 P.2d 191, 59 OBJ 2949, Lee Way Motor Freight, Inc. v. WelchDiscussed
 1988 OK 140, 766 P.2d 344, 59 OBJ 3438, Valley Vista Development Corp., Inc. v. City of Broken ArrowDiscussed
 2001 OK 1, 39 P.3d 754, 72 OBJ 2929, BEVILLE v. CURRYDiscussed
 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. AuthorityDiscussed
 1993 OK 112, 867 P.2d 438, 64 OBJ 2836, Hough v. LeonardDiscussed at Length
 1915 OK 140, 147 P. 310, 45 Okla. 807, PARKER v. LEWISDiscussed
 1994 OK 24, 869 P.2d 840, 65 OBJ 795, Markwell v. Whinery's Real Estate, Inc.Discussed
 1994 OK 145, 890 P.2d 878, 65 OBJ 4212, Mosier v. Oklahoma Property and Cas. Ins. Guar. Ass'nDiscussed
 1954 OK 189, 272 P.2d 365, STILLWELL v. JOHNSONDiscussed at Length
 2001 OK 113, 41 P.3d 366, 72 OBJ 3685, SCOUFOS v. STATE FARM FIRE & CASUALTY CO.Discussed
 1960 OK 241, 358 P.2d 187, MULLINIX CONSTRUCTION COMPANY v. MYERSDiscussed at Length
 1932 OK 471, 12 P.2d 490, 158 Okla. 40, In re COPPERFIELD'S ESTATE. COPPERFIELD et al. v. SHEDD Gd'n et alDiscussed
 1920 OK 39, 188 P. 343, 77 Okla. 265, HARN v. INTERSTATE BLDG. & L. CO.Discussed
 1999 OK 87, 20 P.3d 135, 70 OBJ 3149, May-Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co.Discussed
 1964 OK 192, 395 P.2d 416, KANSAS CITY SOUTHERN RAILWAY CO. v. BLACKDiscussed at Length
 1964 OK 194, 397 P.2d 126, CARRACO OIL COMPANY v. ROBERTSDiscussed
 1967 OK 251, 436 P.2d 32, BROOK v. JAMES A. CULLIMORE & CO.Discussed
 2002 OK 31, 46 P.3d 698, JONES, GIVENS, GOTCHER & BOGAN, P.C. v. BERGERDiscussed
 2002 OK 60, 52 P.3d 1014, MYERS v. MISSOURI PACIFIC RAILROAD CO.Discussed
 2002 OK 66, 55 P.3d 1054, LEAK-GILBERT v. FAHLEDiscussed
 1995 OK 10, 903 P.2d 263, 66 OBJ 583, Strubhart v. Perry Memorial Hosp. Trust AuthorityDiscussed
 2002 OK 67, 58 P.3d 759, CONTEREZ v. O'DONNELLDiscussed
 1968 OK 176, 448 P.2d 456, LOVE v. HARVEYDiscussed
 1995 OK 66, 899 P.2d 621, 66 OBJ 2156, Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.Discussed
 1995 OK 69, 903 P.2d 293, 66 OBJ 2117, Stites v. Duit Const. Co., Inc.Discussed
 1995 OK 75, 898 P.2d 1280, 66 OBJ 2327, State ex rel. Dept. of Public Safety v. 1985 GMC PickupDiscussed
 1971 OK 25, 482 P.2d 583, STATE EX REL. DEPARTMENT OF HIGHWAYS v. COLLINSDiscussed
 1995 OK 131, 907 P.2d 1067, 66 OBJ 3765, Jackson v. JonesDiscussed
 1995 OK 137, 910 P.2d 984, 66 OBJ 3904, Gallagher v. Enid Regional HospitalDiscussed
 1995 OK 140, 910 P.2d 993, 66 OBJ 3905, Krumme v. MoodyDiscussed
 1973 OK 122, 515 P.2d 568, HAYNES v. ALVERNO HEIGHTS HOSPITALDiscussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAYDiscussed at Length
 2003 OK 57, 77 P.3d 588, MORAN v. CITY OF DEL CITYDiscussed
 2003 OK 67, 73 P.3d 887, U.S. MORTGAGE v. LAUBACHDiscussed
 2003 OK 103, 81 P.3d 662, TULSA COUNTY BUDGET BOARD v. TULSA COUNTY EXCISE BOARDDiscussed
 2004 OK 40, 93 P.3d 19, COOPER v. BOOHERDiscussed
 2004 OK 74, 100 P.3d 707, STATE ex rel. DEPT OF TRANSPORTATION v. LITTLEDiscussed
 2005 OK 47, 115 P.3d 861, PUBLIC SERVICE CO. OF OKLA. v. STATE ex rel. OKLA. CORP. COMM'NDiscussed
 2006 OK 47, 139 P.3d 897, LIERLY v. TIDEWATER PETROLEUM CORPORATIONDiscussed
 2006 OK 67, 145 P.3d 1055, WORSHAM v. NIXDiscussed
 2006 OK 84, 148 P.3d 880, LERMA v. WAL-MART STORES, INC.Discussed at Length
 1996 OK 60, 917 P.2d 473, 67 OBJ 1594, Barnett v. BarnettDiscussed
 2007 OK 10, 164 P.3d 116, NEUMANN v. ARROWSMITHDiscussed at Length
 1996 OK 99, 928 P.2d 291, 67 OBJ 2798, Dominion Bank of Middle Tennessee v. MastersonDiscussed at Length
 1996 OK 118, 933 P.2d 272, 67 OBJ 3136, Nichols v. Mid Continent Pipe Line CompanyDiscussed
 2009 OK 56, 212 P.3d 731, WILSON v. WEBBCited
 2010 OK 16, 231 P.3d 645, DEPT. OF SECURITIES ex rel. FAUGHT v. BLAIRCited
 2011 OK 1, 250 P.3d 305, CITY OF BROKEN ARROW v. BASS PRO OUTDOOR WORLD, L.L.C.Discussed
 2012 OK 21, 292 P.3d 10, JAMES v. TYSON FOODS, INC.Discussed
 2012 OK 17, 278 P.3d 577, FIELDS v. SAUNDERSDiscussed at Length
 2012 OK 39, 276 P.3d 1031, LEDBETTER v. HOWARDDiscussed at Length
 2012 OK 112, 293 P.3d 964, IN THE MATTER OF THE ESTATE OF BELL-LEVINEDiscussed
 2013 OK 20, 299 P.3d 477, MIAMI BUSINESS SERVICES, LLC v. DAVISDiscussed
 2014 OK 56, 335 P.3d 779, IN THE MATTER OF THE GUARDIANSHIP OF BERRYDiscussed
 2015 OK 33, 350 P.3d 146, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. OLIVERDiscussed
 2015 OK 85, 364 P.3d 644, GOWENS v. BARSTOWDiscussed
 2016 OK 4, 368 P.3d 771, IN THE MATTER OF M.K.T.Discussed
 1980 OK 85, 612 P.2d 266, Jones v. JonesDiscussed
 2016 OK 42, 371 P.3d 477, ROBINSON v. FAIRVIEW FELLOWSHIP HOME FOR SENIOR CITIZENS, INC.Discussed
 2016 OK 67, 374 P.3d 766, AMERICAN NATURAL RESOURCES, LLC v. EAGLE ROCK ENERGY PARTNERS, L.P.Discussed
 2016 OK 119, 390 P.3d 689, OKLAHOMA ASSOC. OF BROADCASTERS, INC. v. CITY OF NORMANDiscussed
 2017 OK 16, 393 P.3d 715, IN THE MATTER OF K.S.Discussed
 2017 OK 34, 394 P.3d 1224, OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENTDiscussed
 2017 OK 42, 396 P.3d 210, ANDREW v. DEPANI-SPARKESDiscussed
 1979 OK 94, 599 P.2d 1104, TISDALE v. WHEELER BROS. GRAIN CO., INC.Discussed
 2017 OK 57, 398 P.3d 11, HENSLEY v. STATE FARM FIRE AND CASUALTY CO.Discussed
 2017 OK 68, 404 P.3d 829, YOUNG v. STATION 27, INC.Discussed
 2017 OK 69, 404 P.3d 843, GRISHAM v. CITY OF OKLAHOMA CITYDiscussed at Length
 2018 OK 32, 419 P.3d 217, TARACORP v. DAILEYDiscussed
 2019 OK 59, 451 P.3d 125, I. T. K. v. MOUNDS PUBLIC SCHOOLSDiscussed at Length
 1980 OK 175, 628 P.2d 1151, Barber v. FlynnDiscussed
 2020 OK 30, 465 P.3d 1213, FARLEY v. CITY OF CLAREMOREDiscussed at Length
 2020 OK 56, 473 P.3d 475, INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTERDiscussed
 2020 OK 63, 466 P.3d 559, IN THE MATTER OF L.M.A.Discussed
 2020 OK 110, 478 P.3d 422, JOHNSON v. CSAA GENERAL INSURANCE CO.Discussed
 2021 OK 31, 489 P.3d 36, STATE ex rel. OKLA. STATE BD. OF MEDICAL LICENSURE AND SUPERVISION v. RIVERODiscussed
 2000 OK 5, 995 P.2d 1141, 71 OBJ 398, Slagell v. SlagellDiscussed
 2000 OK 82, 13 P.3d 484, 71 OBJ 2668, IN THE MATTER OF A.M. & R.W.Discussed
 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.Discussed
 1999 OK 36, 981 P.2d 301, 70 OBJ 1445, Sides v. John Cordes, Inc.Discussed
 1999 OK 66, 988 P.2d 1268, 70 OBJ 2176, Soldan v. Stone VideoDiscussed
 2000 OK 63, 11 P.3d 211, 71 OBJ 1918, STATE OF OKLAHOMA v. VAUGHNDiscussed
 2000 OK 71, 12 P.3d 459, 71 OBJ 2388, BISHOP v. TAKATA CORP.Discussed
Title 12. Civil Procedure
 CiteNameLevel

 12 O.S. 651, New Trial - Definition - Causes forDiscussed at Length
 12 O.S. 991, Right to Perfect Appeal to Supreme Court without Filing Motion for New Trial - ExemptionCited
Title 20. Courts
 CiteNameLevel

 20 O.S. 30.5, Opinions - PublicationsCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA